The opinion of the court was delivered by
Watkins, J.
The multifarious issues raised in this case require a careful’and concise statement in chronological order, to be clearly understood and properly appreciated.
On the 2d of January, 1889, the plaintiff, Learned, obtained an order for the seizure and sale of the defendant, Walton’s Ashland *458 plantation, with its improvements and appurtenances, in the foreclosure of a special mortgage of $8100 — the act stipulating the pact da non alienando and a waiver of the benefit of appraisement.
On the 10th of January, prior to the issuance of the writ, the plaintiff obtained a sequestration of certain movable effects, which were immovable by destination, and formed part of the mortgaged property, though some of it had been removed therefrom. This proceeding had for object to restore and maintain, intact, the property which was affected by the mortgage, and was ancillary to the executory proceedings — the sequestration only being intended to aid in subjecting the movables to the writ of seizure and sale.
On the 16th of January — likewise prior to the issuance of a writ of ■sale — Walton, the . mortgagor, enjoined and prohibited the sheriff from making a seizure of the mortgaged property, on the ground that the creditor had given him an extension of time, and his action was premature.
On the 23d of January R. M. Walmsley & Co. obtained a like order of seizure and sale against the same property and appurtenances, in the foreclosure of a second mortgage of some $4000; and on the 29th of same month the mortgagor, Walton, enjoined on the ground that the debt had been paid.
The sheriffs’ prooes verbal recites the order of court directing a separate appraisement of the personal property, and the postponement of the sale thereof. It also makes special mention of the sale having been made of the crops growing on and attached to the land at the time, though nothing is stated with reference to any other appurtenances or immovables by destination, forming a part of the property which was seized and sold.
In the meanwhile Learned filed an answer to the third opposition -of Rosenthal, affirming the pendency and full force of his executory proceedings, and his right to have sold, under his writ of seizure and sale, all of the immovables by destination, which are claimed by the third opponent, averring the fraud and simulation of her title [to same, and that it should be annulled and set aside, and praying judgment rejectingher demand of ownership, decreeing that said property be subjected to his “mortgage claim, and that it be sold to pay and .satisfy same.”
Whilst these proceedings were in progress, the seizing creditor induced the sheriff, as a matter of judicial administration, to under *459 take the pitching and planting of a crop on the plantation, though this appears to have been done under disadvantageous circumstances, as the defendant, Walton, had stripped it of everything which in any way served for the labors of the farm and its cultivation immediately previous to its seizure, leaving it bare. But Learned advanced the necessary means to put farming operations in progress, and a crop was planted by the sheriff’s keepers, and it was well advanced when the sale was made.
In this condition affairs remained until October following the date of sale, when Walton, defendant, filed an extended answer to the third opposition of Rosenthal, and made a reconventional demand on the seizing creditor, Learned, alleging that the sale of the land was null and void for various causes.
R. M. Walmsley & Co. also appeared in various capacities and pleadings, and so did other parties.
On final trial the judge a quo rendered judgment in these cumulated proceedings as follows, viz:
1. Sustaining plaintiff’s sequestration, except as to five head of milch cows, eight head of yearlings, three head of calves, thirty head of hogs, and one iron safe, as to which it was dissolved, they not being considered immovable by destination.
2. Sustaining Mrs. Rosenthal’s third opposition and recognizing her ownership of those items of property only as to which the plaintiff’s sequestration was dissolved.
3. Maintaining defendant, Walton’s, reconventional demand, in so far as to annul the sheriff’s sale to Learned of the Ashland plantation, under the writ of sale.
4. Annulling the sale of William G. Walton to Mrs. Rosenthal of all the property she claimed, except that above mentioned, and certain cotton seed', corn and hogs, and dissolved her injunction restraining the enforcement of her forthcoming bond.
From this judgment plaintiff,.Learned, and third opponent, Rosenthal, alone appeal; the practical effect of which is to eliminate all other parties, and to restrict the issues for our determination to the following, viz: first, the validity of the sheriff’s sale to Learned; second, that of Mrs. Rosenthal’s title from William G. Walton.
Counsel for the defendant, George L. Walton, answered the appeal and prayed for an amendment of the judgment appealed from by *460 allowing him the rent demanded, or by rejecting this demand as of non-suit.
The judge a quo states, in the judgment pronounced by him, that as no evidence was adduced to establish this claim, and counsel for defendant did not refer to it in his argument, it has not been considered ; and for that reason we do not regard it to be a question for our consideration.
I.
Was the sheriff’s sale to Learned a valid one?
The grounds assigned by Walton for its nullity are: first, that the sale was made without an appraisement having been made, and that he had not the legal right to make a waiver of the benefit of appraisment; second, because the creditor, Learned, had, previous to said sale, converted his proceedings via executiva into proceedings via ordinaria, whereby the seizure of the mortgaged property was released, and the sheriff left without power to proceed with the sale.
The counsel of Learned strenuously insist upon the application of the rule, that a previous tender of the amount of the purchase price should have been made by Walton, as a condition precedent to the institution of an action to annul the sale. 39 A. 874, Farquau vs. lies.
Without making any departure from that well-fixed rule, it is sufficient answer to say, that this is not a suit in the ordinary acceptation of that term, but a reconventional demand, which is incorporated in an answer, and the purchaser of the property is the plaintiff in the writ under which the sale was made, and paid no part of the price in cash, as his mortgage was the senior one in rank. In addition to this the judgment revoking the sale recognized his mortgage as still in existence, unimpaired.
It has been frequently decided by this court that a clause in an act of mortgage dispensing with appraisement is valid in law. 18 An. 68; 19 An. 89; 29 An. 210.
The second ground is equally untenable. In neither the petition of Learned for a sequestration, nor in his answer to the third opposition of Mrs. Rosenthal, is there any prayer for judgment in personam against the debtor and mortgagor, Geo. L. Walton, on the mortgage notes. The sole object of the former was, as we said above, to recover and maintain intact, and as a part of the mortgage property, the immovables by destination, and in order that same might be seized and sold under the writ of seizure and sale.
*461 When Mrs. Rosenthal set np a claim of ownership to the identical property which was sequestered, it was perfectly legitimate and necessary for him to protect his right to subject this property to seizure and sale, under the writ of sale, by establishing the fraud or simulation of her title, in aid of his previous sequestration. It was her claim of ownership that rendered this charge an essential issue. Her third opposition created the necessity for this pleading. The third opposition is an integral part of the sequestration upon which it is engrafted.
These are ancillary to the executory proceedings of Learned, and do.not, in any wise, impair their force or effect. On the contrary they are in aid of their efficacy.
Such a sequestration was recognized in Duncan vs. Wise, 38 An. 75, and Mortgage Co. vs. Ralston, 38 An. 595, as legal and proper.
It would be inconsistent to hold at the same time that such ancillary proceedings had the effect of rendering inefficacious, such executory proceedings.
Between the time of the filing of the two injunctions Mrs. Henrietta Rosenthal filed a third opposition in the executory proceedings, claiming the ownership of the mules, cows, calves, yearlings, hogs, wagons, farming implements, etc., by purchase from William G. Walton, the son of the defendant; and she was permitted to release same from the sequestration on furnishing a bond of $2200.
In the meanwhile Walton appealed from the order of seizure and sale on technical grounds, and, in this court, the order was maintained. Learned vs. Walton, 41 An. 233.
On the 16th of- April, 1889, [the two injunctions were dissolved — no evidence having been introduced in their support — and all the property seized was advertised for sale on the 18th of May following, it being described in the advertisement as it was on the 14th of January, when the writ of seizure and sale issued.
The third opponent, Mrs. Rosenthal, was again permitted to release the whole of the personal effects she claimed on furnishing a forthcoming bond for $3750.
As the sale day was approaching, the sheriff gave the third opponent a notification to that effect, and demanded the forthcoming of the property bonded, for sale on that day. Railing to do so, she amended her third opposition, and obtained an injunction against its sale and against Learned’s enforcement of the forthcoming bond, and *462 obtained an order for its separate appraisement and sale. In this the seizing creditor, Learned, appears to have acquiesced, and, as Walton made no further opposition, the naked plantation was sent to sale on the date specified, and the mortgagee, Learned, became the purchaser at the price of $11,000.
Mrs. Rosenthal being a stranger, and third person claiming ownership, and not a party to the Walton mortgage andnotes, it is apparent that no personal judgment could have been asked or rendered against her, and therefore no controversy between Learned and Mrs.Rosenthal could, in anyway, affect Learned’s executory proceedings against Walton. This is evident.
It is only when the creditor and defendant in an injunction suit by his debtor, answers and prays personal judgment against him for the amount of his mortgage claim, that the proceedings via exeeutiva are transformed into proceedings via ordinaria. Our conclusion is that this part of the judgment appealed from is erroneous, and the sheriff’s sale was improperly annulled.
II.
The validity of the sale of William G. Walton to Mrs. Rosenthal depends upon whether or not it was simulated and fraudulent. While it is true that all the things which the owner of a tract of land has placed upon it for its service and improvement, such as working cattle, implements of husbandry, and the like, are immovable by destination and covered by a pre-existing mortgage attaching to the realty, yet the effect of the mortgage is maintained only so long as the condition of immovable by destination continues.
We held in Weil vs. Lapeyré, 38 An. 303, that “a sale in good faith by the owner” of such immovables by destination, “followed b,y actual delivery to the purchaser * * * does liberate the things thus sold from the effect of the mortgage to which they had been subjected, etc.”
The statement of facts on which the title of Mrs. Rosenthal depends is as follows, viz:
In December of 1887, G. L. Walton, the defendant, sold, or purported to sell, to his son, William G. Walton, the immovables by destination, in satisfaction of an alleged claim of $2000 due him as his wages, as manager of the “Ashland” plantation, during previous years. For the year 1888 the father leased the plantation to his son, *463 ostensibly for $3000, and the latter retained the movables on the place, as they were before.
In December, 1888, the son removed a part of this property across the river into the State of Mississippi, and while there, negotiations were opened with Mrs. Rosenthal' (who lived on a plantation in Louisiana about six miles from Ashland), and in consummation of which, it is claimed, she became the purchaser for the stated price of $2600,; and that part of the movables remaining on Ashland was at once removed to her “Union Point” plantation; and the portion that was transported to Mississippi was returned to that place, also.
We have examined the evidence with care, and it has satisfied us that the whole transaction was a sheer simulation. The two important factors in riveting this conviction on our minds are, first, that while the third opponent claims to have derived title from William G. Walton, all the evidence, and particularly the correspondence, shows that George L. Walton, the mortgagor, conducted the negotiations from beginning to conclusion, and neither the name nor pretensions of William G. Walton are therein once adverted to; and second, while all the correspondence points to the consideration as $1000 in cash and six and eight months’ notes for the balance, the parol proof shows that only one note was executed, and it found its way into a bank in Mississippi as a deposit for the account of G. L. Walton’s attorneys.
It thus appears that not only was G. L. .Walton the party negotiating the sale, but the beneficiary of the price.
The onus probandi was on third opponent to show ownership , but her own letters go a long way to show the contrary; and other testimony puts the fraudulent simulation of her title beyond doubt. These demands should have been rejected in toto, and. Learned’s sequestration maintained in toto. The title never passed to Mrs. Rosenthal.
m.
Much has been said in argument and brief in regard to a large claim of over $6060, which is preferred against Walton, defendant, on account of the cultivation of a crop on the mortgaged premises prior to sale, for account of the sheriff, but there is no mention of it in the Judgment appealed from, and the question of its allowance vel non is not properly before us now.
We think there is no longer any doubt as to the authority of a *464 sheriff in proper eases to plant a crop on plantations under seizure. In Lockhart vs. Morey, 41 An. 1165, we said on this subject:
‘ ‘ A vendor seizing a plantation securing his claim has a right to make the advances necessary for the working of the place while in the sheriff’s custody, and to oversee it, with the sheriff’s consent. In both cases he is entitled to recover the amount of the advances shown to have been made and to recover payment for his services.”
To the same effect is Lambeth vs. Sheriff, 41 An. 749; 4 Southern Reporter 581.
Defendant’s recourse is by a proceeding contradictorily taken with the sheriff by rule, as outlined in the Lambeth case, and in Whitney Ironworks Company vs. Reuss, 40 An. 121. The proceeding would be in the nature of an interlocutory one, forming an addendum to the final judgment rendered in the case. See State ex rel. Attorney General vs. Lazarus, 40 An. 856.
The crop that was growing and formed a part of the realty at the date of sale, May 18, necessarily passed with the land to the purchaser;, Learned. The debtor, Walton, did not undertake to prevent its sale, orto require of it a separate appraisement and sale, so as to ■segregate the proceeds of one from the other; and a sale in globo was not objected to by him. But the movables which Learned caused to be placed on the plantation subsequent to the seizure were not expressly mentioned in either the advertisement or proees verbal of sale.
It is questionable whether they formed a part of the immovables by destination, not having been so placed by the owner of the realty. We think the ends of justice would be best subserved by remitting this question also to the determination of the court a qua in connection with the question of cost of cultivation of the plantation and other costs.
It is ordered and decreed that the judgment appealed from be reversed; and it'is now ordered and decreed that the sale of Ashland plantation, to R. F. Learned, be declared legal and valid, and that the sale of the plantation included that of the growing crop. That the sale from William G. Walton to Mrs. H. Rosenthal be declared ■a fraudulent simulation and void; and plaintiff’s sequestration thereof be reinstated and sustained in toto. That third opponent’s injunction, restraining the plaintiff’s enforcement of the forthcoming *465 bond, be dissolved. That all other questions be dismissed as of non-suit, with the rights of all parties fully reserved.
It is finally ordered and decreed that the defendant, Geo. L. Walton, be taxed with all the costs of the main demand and its incidents, and the third oppqnent with all the costs of the third opposition and its incidents; and that third opponent and defendant be taxed with the costs of appeal ratably and proportionately to their respective demands.